UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In re: David Anthoney Severino,

Debtor.

DAVID ANTHONY SEVERINO,

Appellant,

vs.

Case No. 2:10-cv-411-FtM-29
Adv. Proc. 9:09-ap-00145-ALP
(Bankr. No. 9:08-bk-19654-ALP)

BUSEY BANK, N.A.,

Appellee.

**OPINION AND ORDER**

This matter comes before the Court on appeal from the Bankruptcy Court's April 15, 2010 Final Judgment (Doc. #1-2)[1] in an adversary proceeding initiated by Busey Bank, N.A. (Busey or appellee) against David Anthony Severino (Severino or appellant). Appellant has filed an Initial Brief (Doc. #9), Busey filed an Answer Brief (Doc.#15), and appellant filed a Reply Brief (Doc. #22). After examination of the briefs and record, the Court finds that the decisional process would not be significantly aided by oral argument, and the parties have not requested oral argument.

[1]The Court will hereinafter cite documents filed with the District Court as "Doc.", documents filed in the Bankruptcy case as "Bankr. Doc.", and documents filed in the Adversary proceeding as "Adv. Doc.". Copies of the relevant documents are included in the record transmitted by the Bankruptcy Court, and the undersigned takes judicial notice of the underlying dockets as available through PACER.

**I.**

On December 10, 2008, appellant filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code. On December 16, 2008, appellant filed his Summary of Schedules which includes a list of limited liability companies in Schedule B, each having a "0.00" current value. The Schedules were signed pursuant to a Declaration under penalty of perjury. On March 23, 2009, Busey filed a three-count Adversary Complaint[2] Objecting to the Debtor's Discharge (Bankr. Doc. #43; Adv. Doc. #1) and alleging concealment (Count I), a false oath (Count II), and a failure to explain satisfactorily (Count III) pursuant to Title 11, United States Code, Sections 727(a)(2), 727(a)(4), and 727(a)(5), respectively. More specifically, the Adversary Complaint made the following relevant factual allegations:

> 6. Upon information and belief, the Debtor failed to properly value assets in his Schedules, including, *inter alia*, the value of Debtor's 100% interest in Florida Properties and Development, LLC; Arbour Walk, LLC; Creekside Chase, LLC; Severino Real Estate, LLC; Severino Investments, LLC; and Severino Electric, LLC.
>
> 7. Upon information and belief, the Debtor failed to disclose the nature, location, and name of all businesses, as required pursuant to the Debtor's Statement of Financial Affairs. Specifically, Debtor failed to disclose, *inter alia*, his interest and/or positions held with The Humane Society of Central Illinois; Severino Real Estate Services, LLC; The Ultimate Headband, L.L.C.; Aprile Gufo, L.L.C., and Florida Properties, L.L.C.

---

[2]An Amended Adversary Complaint (Adv. Doc. #4) was filed only to include a signature.

> 8. Upon information and belief, the Debtor also failed to disclose and/or mischaracterized his ownership of certain assets, such as real property owned in Illinois and Florida.
>
> 9. Upon information and belief, the Debtor also failed to disclose and/or mischaracterized his ownership of certain assets, including, *inter alia*, a 1994 Mazda MX-5 Convertible; a 2006 Ford F150; a 2006 Ford Freestyle; a 2005 Tow Truck; a 2005 Tilt Tandem; a 2006 Toyota Tundra Pickup; a 2004 Ford F150; and a 2003 BMW Z4.
>
> 10. The Debtor testified at the 341 Meeting of Creditors in this case that Arbour Walk, LLC made approximately $90,000.00 in rent for the months of September and October of 2008, but the Debtor failed to disclose the current location of these funds and/or the circumstances of their disposition, if any.
>
> 11. The Debtor's Schedules reference the March 28, 2008 sale of real property located at 26340 Hickory Blvd. #903, Bonita Springs, Florida to Ken and Carole Beele of 75 Sundial Crescent, Bonita Springs, Florida 34134, however Debtor simply listed that the property was sold at a "loss," and failed to provide further information regarding the circumstances of the sale including proof of the purchase price and location or disposition of any sale proceeds.
>
> 12. The Debtor testified at the 341 Meeting of Creditors that his company, Severino Electric, LLC held an inventory worth approximately $10,000.00-$15,000.00. However, the Debtor's schedules value the Debtor's 100% interest in Severino Electric, LLC, as $0.00.

(Doc. #1-8, ¶¶ 6-12.) A Final Evidentiary Hearing was set, and the Bankruptcy Court took judicial notice of exhibits for trial. On April 15, 2010, the Bankruptcy Court entered Findings of Fact, Conclusions of Law, and Memorandum Opinion (Adv. Doc. #25) and a Final Judgment (Adv. Doc. #26) dismissing Count I of the Adversary Complaint Objecting to the Debtor's Discharge (Doc. #1-8) with prejudice, finding in favor of appellee and against appellant on

Counts II and III, and as a result, denying Severino a discharge in the underlying bankruptcy case (Bankr. Doc. #64).

**II.**

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). The legal conclusions of the bankruptcy court are reviewed *de novo*, while findings of fact are reviewed for clear error. In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); Matter of Bardwell, 610 F.2d 228, 230 (5th Cir. 1980)[3](test is whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings). On appeal, the court defers to factual determinations by the bankruptcy court unless they are clearly erroneous. In re Davis, 314 F.3d 567, 570 (11th Cir. 2002). Due regard must be given to the bankruptcy court to judge the credibility of the witnesses. Fed. R. Bankr. P. 8013. A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." Crawford v. W. Electric Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States v. United States Gypsum Co., 333 U.S.

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

364, 395 (1948)). Independent factual findings cannot be made on appeal, and if the bankruptcy court is "silent or ambiguous as to an outcome determinative factual question," the case must be remanded. In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993)(citations omitted).

**III.**

In its Findings of Fact, Conclusions of Law, and Memorandum Opinion (Adv. Doc. #25), the Bankruptcy Court found the following facts to be established after trial:

> The Debtor admitted in his testimony in the First Meeting Transcript (Ex. 6, at Page 5) and at the final evidentiary hearing held in his action that when completing the Schedules and Statement of Financial Affairs that he truthfully disclosed all of his assets in which he had some interest as of the date of his bankruptcy filing. His Schedules reflect that he listed one hundred percent (100%) ownership interest in several limited liability companies as follows: (1) Florida Properties; (2) Arbour Walk; (3) Creekside Chase; (4) S.R.E. [Severino Real Estate]; (5) Severino Investments; and (6) Severino Electric. The Debtor valued his interest in each of these entities as "zero." The Debtor further testified that he was the sole manager or controlling executive for each of these entities. It is further apparent that the Debtor has had significant and lengthy experience in managing entities that hold rental properties. The Debtor testified that Creekside Chase, Arbour Walk and Severino Investments all owned rental properties and were operating and generating income at all times relevant to this proceeding.
>
> The Debtor testified that S.R.E. was the operating arm for all of the other business entities which owned rental properties and that S.R.E. derived income from the rents generated by the rental properties owned by those entities. The Debtor further testified that [he] was not employed by S.R.E. and did not receive a salary or a return on his stock from the company. However, S.R.E. paid all of the Debtor's personal expenses and some of

his wife's personal expenses. The Debtor admitted that S.R.E. did have income but no liabilities, thus the value of the entity had to be greater than zero. The Debtor also testified at the Final Evidentiary Hearing that the valuation of 'zero' on the Schedules for that entity was incorrect based upon the income derived from the properties held by the related entities which passed to S.R.E. The Debtor fu[r]ther testified that his listing of "income" on Schedule I was not treated as income since he did not pay any tax on it and since it was not subject to withholding.

The Debtor testified that the rental income derived from Arbour Walk in December of 2008 was $47,762.20. Those rental proceeds were deposited into the Arbour Walk bank account with Citizens Bank of Chatsworth in Illinois. The Debtor testified that he then transferred or caused to be transferred $47,557.66 from the Arbour Walk account into the bank account for S.R.E. on December 15, 2008 (Exh. Nos. 2 and 3). The Debtor did not know and could not explain where the money had gone after its transfer to the S.R.E. bank account. Furthermore, the Debtor testified in the First Meeting Transcript, in the Second Meeting Transcript and in the Deposition that he did not know where approximately $90,000 in rental income collected by Arbour Walk went or how those funds were used. The Debtor also testified at the Final Evidentiary Hearing that he could not explain where any of the nearly $90,000 of rental income, from the business he alone controlled and managed, went or how it was used. The Debtor's testimony proves that he could not satisfactorily explain the loss of the rental income.

With regard to the Debtor's failure to disclose or the mischaracterization of the ownership and disposition of the Debtor's interest in a 2004 Mazda MX-5 convertible and 2003 BMZ Z4, the Debtor's testimony reveals that he did own both of those vehicle pre-petition. Further, the Debtor testified that he transferred both of these vehicles to third parties on or about March 5, 2007. However the Debtor's schedules on their face show that he did not disclose his ownership interest in those vehicles nor the details of the disposition of the vehicles.

Despite the realization that he had not properly disclosed the disposition of these assets, he nevertheless failed to amend his Schedules or Statement of Financial Affairs.

> Busey further alleged that Debtor failed to disclose the nature of his interest in, the location of, his interests in the Humane Society of Central Illinois, Severino Real Estate Services, LLC, Ultimate Headband, LLC, Aprile Gufo, LLC and Florida Properties, LLC. This court finds that there was no evidence introduced by either party regarding these entities.

(Adv. Doc. #25, pp. 3-5.)

With respect to Count I, the Bankruptcy Court found that Busey failed to elicit testimony or present evidence regarding debtor's involvement in the Humane Society of Central Illinois; Severino Real Estate Services, LLC; The Ultimate Headband, LLC; Aprile Gufo, LLC; or Florida Properties, LLC, and therefore did not consider the allegations. The Bankruptcy Court found that debtor did not act with fraudulent intent in failing to disclose the disposition of the Mazda MX-5 and BMW Z4 prior to the filing for bankruptcy relief, and found that it was "merely an oversight or misunderstanding on the part of the Debtor." (Id., p. 8.) Therefore, the Bankruptcy Court determined that Busey did not establish the claim of concealment and Count I was dismissed.

With respect to Counts II and III, the Bankruptcy Court determined that debtor is a:

> sophisticated business who was meaningfully involved in real estate ventures, not only in the State of Florida, but also in State of Illinois, for many years. He had a one hundred percent (100%) ownership interest in Arbour Walk, Creekside Chase, Severino Real Estate, Severino Investments, and Severino Electric. Each of these entities had significant business dealings over a long period of time and all were owned and controlled solely by the Debtor.

> All of the businesses described above were scheduled with a valuation of 'zero.' The Debtor's explanation for the zero valuation was, at best, very vague and totally insufficient. More importantly the Debtor could not explain the failure to account for significant amounts of income into these entities and ultimately received by S.R.E. which would have significantly increased the value of those entities. The Debtor did not state, and could not explain, the alleged liabilities for these entities in any detail sufficient to substantiate a 'zero' valuation. The fact remains that these are entities which generate significant income which is paid to Severino Real Estate which, in turn, pays all of the Debtor's expenses, including his wife's expenses. More importantly, there is no record evidence which even remotely sheds light into the relationship of the Debtor's entities or the whereabouts of the unaccounted for rental monies which were admittedly received immediately pre-petition by the Debtor's solely owned entities. None of the filings by the Debtor in this case explain the disposition of such income nor its current location.
>
> This Court is satisfied that the failure to explain and state the true value of the Debtor's business entities and his insufficient explanation to prove the disposition of loss of assets as noted above is tantamount to a false oath. In addition, the facts of record also support a finding that the Debtor failed to satisfactorily explain the loss of his assets.

(Id., pp. 10-11.) The Bankruptcy Court rejected debtor's defense that he relied on advice of counsel in preparing the Schedules because the valuations were materially incorrect, and because it is not a defense to a claim of false oath or failure to explain. (Id., p. 12.) Judgment on Counts II and III was entered in favor of Busey and discharge was denied.

**IV.**

Appellant argues that there is no competent, substantial evidence to support the holding that debtor made a false oath

justifying the denial of a discharge, and that an erroneous legal standard was applied in making the determination that a false oath occurred. Under Section 727, a discharge shall be granted to a debtor, unless:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition;
>
> . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case--
>
> > (A) made a false oath or account;
> >
> > (B) presented or used a false claim;
> >
> > (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> >
> > (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. §§ 727(a)(2), (a)(4), (a)(5). Only the false oath in subsection 4 and failure to explain satisfactorily in subsection 5 are at issue on appeal. Appellant initially treated them as one issue, and in his reply brief discussed each subsection separately.

A discharge should not be granted where "the debtor knowingly and fraudulently made a false oath or account." In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984)(citing In re Raiford, 695 F.2d 521, 522 (11th Cir. 1983)). Deliberate omissions, such as a "knowing and fraudulent omission from a sworn Statement of Affairs or schedule may constitute a false oath" and may also result in the denial of a discharge. Id. at 618 & n.3. The false oath must be fraudulent and material, Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991), and made intentionally, In re Rudolph, 233 F. App'x 885 (11th Cir. 2007)(citing In re Cutignola, 87 B.R. 702, 706 (Bankr. M.D. Fla. 1988)). The Eleventh Circuit considered the holding of several circuits to support the position that:

> that detriment to the creditor need not be shown in order to bar discharge for making a false oath. [ ] The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. [ ] See also Metheany v. United States, 365 F.2d 90, 93 (9th Cir. 1966) ("material matter" refers not only to the main fact which is subject to inquiry, but also to any fact or circumstance which tends to corroborate the proof adduced to establish the main fact). The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. [ ] It makes no

> difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them. [ ] The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act.

In re Chalik, 748 F.2d at 618 (internal citations omitted). "[R]epeated nature of non-disclosures and improper disclosures" can support a finding of fraudulent intent. In re Protos, 322 F. App'x 930, 933 (11th Cir. 2009).

**V.**

Appellant's argument that the valuation of "zero" was an opinion and therefore could not be construed as fraud is rejected. The valuation was not an estimate or an opinion of valuation, or inadvertence because Severino valued his interest in 6 companies as zero. Severino himself testified, Adv. Doc. #37, pp. 30-31, and the Bankruptcy Court found that income was clearly coming into Severino Real Estate and that the valuation of the corporation therefore could not be zero. In finding fraudulent intent, the Bankruptcy Court also found it significant that Severino could not account for income that was received by Severino Real Estate or the whereabouts of the unaccounted for rental monies received immediately pre-petition. These are clearly material omissions and given the opportunity to respond, there was no explanation. Severino was aware that income was coming in to the companies, yet deliberately valued them as "zero", and did not amend his schedules upon discovering that the method of valuing was incorrect. "It

makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them. [ ] The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act." In re Chalik, 748 F.2d at 618 (internal citations omitted).

The Bankruptcy Court found the valuation of "zero" and subsequent failure to satisfactorily explain and state the true value of the corporations was tantamount to a false oath. Appellant argues that "tantamount" is not the same as an actual finding of fraud and therefore the incorrect legal standard was applied. A deliberate omission however can be deemed fraudulent, and whether the debtor thinks the holdings are worthless is not for him to decide. This was not a mistake, but an intentional omission. After a *de novo* review of the legal conclusions, the Court finds the correct law was applied. The record also supports the factual findings, and the Court finds no clear error.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

The Bankruptcy Court's Final Judgment (Adv. Doc. #26) is **affirmed**. The Clerk shall enter judgment accordingly, transmit a copy of this Opinion and Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this 25th day of March, 2011.

**JOHN E. STEELE**
**United States District Judge**

Copies:
Hon. Alexander L. Paskay
Counsel of record
Clerk, Bankr. Ct.